UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APRIL FARMER                                    CIVIL ACTION

VERSUS                                          NO. 16-16459

CECILIA MOUTON ET AL.                           MAGISTRATE JUDGE
                                                JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is an employment discrimination action brought by plaintiff April Farmer against her former employer, the Louisiana State Board of Medical Examiners (the "Board"), and the Board's Executive Director and Director of Investigations, Dr. Cecilia Mouton, in her individual and official capacities. Farmer asserts claims of race discrimination, hostile work environment, constructive discharge and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:301 et seq., and 42 U.S.C. § 1983; reprisal for whistle-blowing activity in violation of the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967; and intentional infliction of emotional distress under Louisiana state law. She seeks compensatory and punitive damages, a declaratory judgment and injunctive relief. Complaint, Record Doc. No. 1.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 20.

The Board filed a Rule 12(b)(1) and 12(b)(6) Motion for Partial Dismissal as to all of plaintiff's claims, <u>except</u> (1) her discrimination, hostile work environment and retaliation claims[1] against the Board under Title VII, and (2) her discrimination, hostile work environment and retaliation claims against Dr. Mouton in her individual capacity under Section 1983 and her related claim for punitive damages against Dr. Mouton individually. Record Doc. No. 14. Farmer filed a timely opposition memorandum, Record Doc. No. 18, and defendants received leave to file a reply memorandum. Record Doc. Nos. 21, 23, 24. Having considered the complaint, the record, the arguments of the parties and the applicable law, and for the following reasons, IT IS ORDERED that the motion is GRANTED IN PART AND DENIED IN PART as follows.

A.    <u>Standards of Review</u>

Defendants move to dismiss some of plaintiff's claims under Fed. R. Civ. P. 12(b)(1), which requires dismissal if the court lacks subject matter jurisdiction over the claim. Motions brought under Rule 12(b)(1)

> allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

---

[1] Defendants do not specifically mention Farmer's constructive discharge claim, but constructive discharge can be a form of discrimination or retaliation. <u>Brown v. Liberty Mut. Grp., Inc.</u>, 616 F. App'x 654, 657 (5th Cir. 2015); <u>Noack v. YMCA of Greater Houston</u>, 418 F. App'x 347, 352 (5th Cir. 2011); <u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 566 (5th Cir. 2001).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted); accord Crane v. Johnson, 783 F.3d 244, 250-51 (5th Cir. 2015) (citations omitted).

A Rule 12(b)(1) motion should be granted only if it appears certain that plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. Venable v. La. Workers' Comp. Corp., 740 F.3d 937, 941 (5th Cir. 2013); Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009). A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion under Rule 12(b)(6). In re Mirant Corp., 675 F.3d 530, 533 (5th Cir. 2012); Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008).

Defendants move pursuant to Rule 12(b)(6) to dismiss some of plaintiff's claims for failure to state a claim upon which relief can be granted. Under this rule, as clarified by the Supreme Court,

> "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

3

"The Supreme Court's decisions in Iqbal and Twombly . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff." Id. at 803 n.44 (quotation omitted); accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc., 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014)).

"With respect to any well-pleaded allegations[,] 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Jabary v. City of Allen, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting Iqbal, 556 U.S. at 664). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish, 456 F. App'x 336, 340 (5th Cir. 2011) (quotations omitted) (citing Iqbal, 129 S. Ct. at 1959; Elsensohn v. St. Tammany Parish Sheriff's Ofc., 530 F.3d 368, 371 (5th Cir. 2008); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 n.10 (5th Cir. 2007)).

B.     Eleventh Amendment Immunity for State Law Claims

Defendants contend in their Rule 12(b)(1) motion that Farmer's "state law discrimination claims," Record Doc. No. 14-1 at p. 5 (which the court understands to mean her claims of race discrimination, hostile work environment, constructive discharge and retaliation under the Louisiana Employment Discrimination Law); reprisal under the

Louisiana Whistleblower Statute; and intentional infliction of emotional distress under Louisiana law against the Board and against Dr. Mouton in her official capacity must be dismissed for lack of subject matter jurisdiction. Defendants argue that the Board is a state agency that, pursuant to the Eleventh Amendment to the United States Constitution, is immune to being sued on state law claims in federal court and that Dr. Mouton in her official capacity is similarly immune.

Farmer responds that the Board is not an "arm of the state" entitled to immunity because it is not state-funded. In support, Farmer submitted an unverified copy of the Board's budgets for 2014 and 2013. Plaintiff's Exh. F, Record Doc. No. 18-6. In their reply memorandum, defendants do not contest the authenticity of the budgets, but argue that the court should ignore the exhibit when resolving their motion under Rule 12(b)(6). However, in deciding a Rule 12(b)(1) motion "involving jurisdiction, the district court may consider evidence outside the pleadings and resolve factual disputes." In re Complaint of RLB Contracting, Inc., 773 F.3d 596, 601 (5th Cir. 2014). Eleventh Amendment immunity is jurisdictional. Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 280 (5th Cir. 2002). Thus, the court considers the budget documents in connection with defendants' Rule 12(b)(1) motion.

The State of Louisiana is immune from suit in federal court under the Eleventh Amendment. Sovereign immunity under the Eleventh Amendment bars actions in federal court against a state or state agency unless the state has consented to be sued or Congress

has clearly and validly abrogated the state's immunity.  U.S. Const. amend. XI; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Ala. v. Pugh, 438 U.S. 781, 782 (1978); Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002); Cozzo, 279 F.3d at 280.

"Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."  Perez, 307 F.3d at 326.  "[W]hether a particular political entity is an arm of the state is a question of federal law."  Vogt v. Bd. of Comm'rs, 294 F.3d 684, 690 n.4 (5th Cir. 2002) (citation omitted).

> There is no bright-line test for determining whether a political entity is an "arm of the State" for purposes of Eleventh Amendment immunity. Instead, the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state.  In making this inquiry, this circuit traditionally has considered six factors:  (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.  [T]he most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds.

Id. at 689 (quotation and citations omitted) (emphasis added).  "[T]he last two factors weigh significantly less in the six factor balance of equities."  Cozzo, 279 F.3d at 281.

 "Moreover, an official-capacity suit for monetary relief 'against a state officer is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself' and is likewise barred by the Eleventh

Amendment." <u>Emerson v. Provencher</u>, No. 15-137-SDD-RLB, 2015 WL 9685505, at *2

(M.D. La. Dec. 1, 2015), <u>report & recommendation adopted</u>, 2016 WL 109968 (M.D. La.

Jan. 8, 2016) (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25-26 (1991)); <u>accord</u> <u>Chaney v. La.</u>

<u>Work Force Comm'n</u>, 560 F. App'x 417, 418 (5th Cir. 2014) (citing <u>Hafer</u>, 502 U.S. at

25).

Thus, in each unsanctioned instance of federal suit, the state or its agency must

affirmatively waive its Eleventh Amendment immunity. <u>Port Auth. Trans-Hudson Corp.</u>

<u>v. Feeney</u>, 495 U.S. 299, 305 (1990); <u>Stem v. Ahearn</u>, 908 F.2d 1, 4 (5th Cir. 1990). "By

statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign

immunity regarding suits in federal courts." <u>Cozzo</u>, 279 F.3d at 281 (citing La. Rev. Stat.

§ 13:5106(A), which provides: "No suit against the state or a state agency or political

subdivision shall be instituted in any court other than a Louisiana state court."").

Defendants decline to waive their alleged immunity in the instant case.

In support of their argument that the Board is an arm of the state entitled to

Eleventh Amendment immunity, defendants rely on La. Rev. Stat. § 37:1263(A), which

provides: "The Louisiana State Board of Medical Examiners is hereby created within the

Louisiana Department of Health." Defendants accurately assert that every district court

in Louisiana to consider the issue has held that the Board is immune from suit on state

law claims in federal court. <u>See</u> <u>Hunter v. La. State Bd. of Med. Examiners</u>, No. 15-

1833, 2016 WL 3388380, at *2 (E.D. La. June 20, 2016); <u>Azfal v. Mouton</u>, No. 14-2786,

2015 WL 2169529, at *3 (E.D. La. May 8, 2015); Farber v. La. State Bd. of Med. Examiners, No. 06-3475, 2006 WL 3531644, at *3 (E.D. La. Dec. 5, 2006); Torres-Jiminez v. La. State Bd. of Med. Examiners, No. 95-0721, 1995 WL 626155, at *2 (E.D. La. Oct. 23, 1995); Creech v. La. State Bd. of Med. Examiners, No. 89-0663, 1989 WL 62571, at *1 (E.D. La. June 6, 1989). For the following reasons, I do not find this line of cases dispositive or even persuasive.

First, the Fifth Circuit has never addressed whether the Board is an arm of the state. That court has held that the Louisiana Department of Health's predecessor, the Department of Health and Human Resources ("DHHR"), is a state agency entitled to Eleventh Amendment immunity. Darlak v. Bobear, 814 F.2d 1059, 1059 (5th Cir. 1987). In Darlak, the Fifth Circuit examined the six factors quoted above to determine that Charity Hospital of Louisiana at New Orleans was also an arm of the state. Based on Louisiana law then in effect, the court held that Charity Hospital was a part of the DHHR and an alter ego of the state entitled to Eleventh Amendment immunity. Id. at 1059-60. An analysis of the six factors relative to the Board today would not necessarily be the same as an analysis relative to the now-defunct Charity Hospital in 1987.

Second, none of the district court decisions cited by defendants evaluated the six factors. Rather than undertaking a detailed analysis, each of those decisions found only that the earlier cases from this district had already held that the Board is a state agency for immunity purposes. However, the earliest of the decisions, and the one from which

all the others flow, was a one-paragraph decision that cited only a Fifth Circuit case regarding the Texas State Board of Medical Examiners, in which the plaintiff had not disputed that the Texas Board of Medical Examiners was a state agency and immune from suit. Creech, 1989 WL 62571, at *1 (citing Emory v. Tex. State Bd. of Med. Examiners, 748 F.2d 1023, 1025 (5th Cir. 1984)). The Creech court did not mention the six-factor test, which had been well established since the Fifth Circuit decided Clark v. Tarrant Cnty., 798 F.2d 736, 743-45 (5th Cir. 1986), almost three years earlier. Thus, no Louisiana district court has examined the Clark factors to decide whether the Board is an arm of the state for Eleventh Amendment purposes. See Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 319 n.1 (5th Cir. 2001) (Decisions from a Texas federal district court "are neither binding nor persuasive, because none properly examined the issue of Eleventh Amendment immunity. See Young v. DART, . . . No. 3:95-CV-2596-X, 1999 WL 197917, 1999 U.S. Dist. LEXIS 4470, at *3 (N.D. Tex. Mar. 24, 1999) (declining to follow [earlier decisions] because 'neither case delivers a thoughtful and/or detailed argument' with respect to Eleventh Amendment immunity . . . .").

Third, apparently unlike the plaintiffs in the prior cases, Farmer has provided evidence and cited state law that the Board's source of funding is independent from the Louisiana treasury, which is relevant to the most important of the six factors that determine arm of the state status and weighs against Eleventh Amendment immunity.

Defendants did not respond to plaintiff's argument in this regard. This court therefore undertakes the six-factor analysis.

As to the first factor, the Fifth Circuit in <u>Darlak</u>, 814 F.2d at 1059, and Louisiana law established that the Department of Health is a state agency. La. Rev. Stat. §§ 36:4(a)(5), 36:251. As defendants state, "[t]he Louisiana State Board of Medical Examiners is hereby created within the Louisiana Department of Health." La. Rev. Stat. § 37:1263(A). This factor favors finding that the Board is an arm of the state.

As to the second, most significant factor, the court must "conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state liability for the defendant's general debts and obligations." <u>Vogt</u>, 294 F.3d at 693 (quotation omitted). Defendants have presented neither evidence nor legal citation that a judgment against the Board will result in liability for the state, and my research has located no specific statute on this issue.

However, "the state's liability for a judgment is often measurable by a state's statutes regarding indemnification and assumption of debts." <u>Id.</u> That statute is La. Rev. Stat. § 13:5108.1(E)(3)(a), which defines "employee" for indemnification purposes to <u>exclude</u> various specified political subdivision officials, but <u>not</u> employees of agencies within the Department of Health, which are presumptively included. "And the Louisiana Constitution provides that 'No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor

10

by the legislature' . . . ." <u>Vogt</u>, 294 F.3d at 693 (quoting La. Const. art. 12, § 10(C)).

Thus, "judgments against state agencies or departments within the executive branch are

treated as liabilities of the state itself." <u>Id.</u> (citing <u>Delahoussaye v. v. City of New Iberia</u>,

937 F.2d 144, 148 (5th Cir. 1991); <u>Darlak</u>, 814 F.2d at 1059 ; <u>Voisin's Oyster House,</u>

<u>Inc. v. Guidry</u>, 799 F.2d 183, 186-87 (5th Cir. 1986)).  This first step of the second factor

favors a finding of Eleventh Amendment immunity for the Board.

"The next step is to determine whether the state will indirectly fund a judgment

against the [agency] because the state either is responsible for general debts and

obligations or provides the lion's share of the [agency's] budget." <u>Id.</u>  The state has no

liability for the Board's general debts and obligations.  Under Louisiana law, "[a]ll

money received by the state or by any state board, commission, or agency shall be

deposited immediately upon receipt in the state treasury."  La. Rev. Stat. § 49:308(A);

<u>accord</u> La. Const. art. 7, § 9.  However, with respect to the Board, "[a]ll monies collected

by the board shall be deposited in the treasury <u>of the board</u>.  All expenses of the board

and compensation of board members and employees shall be paid <u>out of the funds of the</u>

<u>board only</u> and shall <u>never</u> be a charge on the state."  La. Rev. Stat. § 37:1269 (emphasis

added); <u>see also</u> <u>id.</u> § 37:1270(B)(3) (The Board may employ counsel to carry out its

functions, "if the fees of the counsel and the costs of all proceedings except criminal

prosecutions, are paid by the board out of its own funds.").  The 2013 and 2014 budgets

submitted by Farmer reveal that the Board received "0" dollars from the "State General

Fund" and was entirely funded by and paid its expenses from the self-generated fees, fines and other revenues received through its oversight of the medical profession. Plaintiff's Exh. F, Record Doc. No. 18-6 at pp. 2, 20.

The Fifth Circuit in Vogt found that "the Orleans Levee District receives very little funding from the state. The levee district generates its own revenues from the Lakefront airport, a casino, leases of property, fees from boatslips and marinas, and taxes," and "is almost entirely self-supporting," which "points against Eleventh Amendment immunity." Vogt, 294 F.3d at 694. Louisiana state courts have similarly held that fees collected by a self-funded state agency, over which the agency maintains control and from which it funds its own operations, "do not constitute 'state funds,' as those fees are not deposited, on receipt, into the state treasury." DeJean v. Purpera, 199 So. 3d 11, 18 (La. App. 1st Cir. 2016), writ denied, 206 So. 3d 199 (La. 2016) (citing La. Rev. Stat. § 49:308; Dejoie v. Medley, 9 So. 3d 826, 831 (La. 2009)) (fees collected by justice of the peace). In Dejoie, the plaintiff had worked for a judge of a parish court and sued the judge, the Judicial Expense Fund and the state under the Louisiana Employment Discrimination Law. The Louisiana Supreme Court examined whether the state was plaintiff's employer for purposes of that law. The statutory definition requires an "employer" to "receive services from an employee and in return give compensation to that employee." Dejoie, 9 So. 3d at 830 (quoting La. Rev. Stat. § 23:302(2)). The Supreme Court held that the state was not plaintiff's employer because the source of her compensation was the

Judicial Expense Fund, not the state. "The funds contained in the JEF are not State funds but are self-generated funds collected" from the activities of the courts, which are held in separate accounts over which the courts have sole control to make disbursements. Id.

A federal district court recently held that the Louisiana State Board of Cosmetology ("LSBC") is not an arm of the state for Eleventh Amendment purposes in large part because that board's "total means of financing has been accounted for by fees and self-generated revenues." Nguyen v. La. State Bd. of Cosmetology, No. 14-00080-BAJ, 2015 WL 1281959, at *6 (M.D. La. Mar. 20, 2015). The defendant "does not address the issue of whether LSBC's funding is linked to the state treasury. On the pleadings before the Court, it appears undisputed that any judgment against the LSBC would not be paid from the state treasury." Id.

The much-respected Judge Vance of this court analyzed the six factors with respect to the Louisiana Patients' Compensation Fund, which is funded through surcharges levied on qualified health care providers, and held that "the most important [second] factor of the test weighs strongly in favor of a determination that Louisiana is not the real party in interest." Siegrist v. Kleinpeter, No. 02-2365, 2004 WL 422007, at *4 (E.D. La. Mar. 5, 2004). Judge Vance based this ruling on the state's acknowledgment in the statute that created the Fund "that the fund and any income from it are not public monies," and the facts that the Fund's expenses are paid from the monies it collects, its administration is not financed with state-provided monies and the state is

not liable for any claims against the Fund because the claims are limited to monies available in the Fund.  Id. at *3-4.

In the instant case, the self-generating source of the Board's funding for general obligations, which is the second step of the second factor, weighs against immunity. However, the second factor as a whole is not as clearly against Eleventh Amendment immunity as it was in Vogt and Siegrist.  Although the Board is entirely self-funded, which weighs against a finding that it is an arm of the state, it appears that the state treasury may be liable for any judgment against the Board, which weighs "most importantly" in favor of immunity.  Vogt, 294 F.3d at 693.  On balance, this factor leans in favor of finding Eleventh Amendment immunity.

The third factor in the Eleventh Amendment immunity analysis is the agency's degree of local autonomy, which "requires analysis of the extent of the [entity's] independent management authority . . . [as well as] the independence of the individual commissioners who govern the entity."  Vogt, 294 F.3d at 694 (quotation omitted) (brackets in original).  The Board has great latitude to "take appropriate administrative actions to regulate the practice of medicine in the state of Louisiana" and "adopt rules and bylaws necessary for the efficient operation of the board," La. Rev. Stat. § 37:1270(A)(1), (B)(1), without "direct state oversight of the Board or involvement in administration of the [Board]."  Siegrist, 2004 WL 422007, at *5.  "In the Fifth Circuit, 'the vulnerability of the commissioners to the governor's pleasure militates against a

finding of local autonomy' . . . ." <u>Nguyen</u>, 2015 WL 1281959, at \*6 (citing <u>Jacintoport Corp. v. Greater Baton Rouge Port Comm'n</u>, 762 F.2d 435, 442 (5th Cir. 1985)).  In the instant case, rather than serving at the governor's pleasure, Board members are appointed by the governor to four-year terms and can only be removed for good cause.  La. Rev. Stat. § 37:1263(B), (D), (E)(3).  Thus, the third factor weighs against Eleventh Amendment immunity.  <u>Siegrist</u>, 2004 WL 422007, at \*5.

As to the fourth factor, whether the entity is concerned primarily with local, as opposed to statewide, problems, the Board governs the statewide granting and oversight of licenses to practice medicine.  This factor weighs in favor of Eleventh Amendment immunity.

The fifth factor "counts . . . against Eleventh Amendment immunity if the entity has the ability to sue and be sued." <u>Nguyen</u>, 2015 WL 1281959, at \*7 (citing <u>Hudson v. City of New Orleans</u>, 174 F.3d 677, 691 (5th Cir. 1999)).  Defendants do not argue that the Board cannot sue or be sued in its own name.  Louisiana law gives the Board the authority to petition any competent court to enjoin any person from practicing medicine until such person obtains a license and to demand of the defendant a penalty, attorney's fees and court costs.  La. Stat. Ann. § 37:1286(A), (B).  A Westlaw search reveals numerous cases in the federal and Louisiana state courts in which the Board is a named party, most often as a defendant, but sometimes as a plaintiff.  The Board may employ counsel to carry out its functions, "if the fees of the counsel and the costs of all

15

proceedings except criminal prosecutions, are paid by the board out of its own funds."
La. Rev. Stat. § 37:1270(B)(3). The Board's budgets submitted by Farmer show that
more than $800,000 per year was spent on fees for outside counsel, "which implies that
the [Board] may sue and be sued." Siegrist, 2004 WL 422007, at *5. This factor weighs
against immunity.

As to the sixth factor, my research has found no specific law on whether the Board
has the right to hold and use property. However, the budgets show that the Board
incurred annual "building operation expense" in excess of $175,000 in the years 2011
and 2012 projected through 2014, and spent more than $5.6 million in 2011 for "Major
Repairs: Bldg Improvements (Renovation to building and architectural fees)" and more
than $442,000 for the same items in 2012. Plaintiff's Exh. F, Record Doc. No. 18-6 at
pp. 3, 13, 17, 20-21, 35. These entries indicate that the Board owns immovable property,
which weighs against immunity. Nguyen, 2015 WL 1281959, at *7 (citing Voisin's
Oyster House, 799 F.2d at 187); Siegrist, 2004 WL 422007, at *5.

On the current record, three of the six factors (local autonomy, capacity to sue and
be sued, and right to hold and use property) weigh against a finding of Eleventh
Amendment immunity for the Board. However, the last two of those factors "weigh
significantly less in the six factor balance of equities." Cozzo, 279 F.3d at 281. Two
factors (characterization under state law and statewide concerns) clearly weigh in favor
of immunity, while the most significant and heavily weighted second factor, leans in

favor. It is a close question, but I find that the Board is an arm of the state with Eleventh Amendment immunity from state law claims in this court.

Farmer contends that, even if the Board is entitled to such immunity, Dr. Mouton is not immune in her official capacity from plaintiff's claims for prospective injunctive relief under the Ex parte Young, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity. However, plaintiff has cited no law for the proposition that Ex parte Young applies to state law claims. To the contrary, the exception

> has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States. This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law. However, since state law claims do not implicate federal rights or federal supremacy concerns, the Young exception does not apply to state law claims brought against the state.

McKinley v. Abbott, 643 F.3d 403, 406 (5th Cir. 2011) (quotations and citations omitted); accord NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015).

Accordingly, defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is GRANTED as to Farmer's claims under the Louisiana Employment Discrimination Law, Louisiana Whistleblower Statute and Louisiana tort law against the Board and Dr. Mouton in her official capacity, which are dismissed without prejudice. Int'l Energy Ventures Mgmt. v. United Energy Grp., Ltd., 818 F.3d 193, 210 (5th Cir. 2016).

C.    Claims Against Dr. Mouton Individually Under Title VII, the Louisiana
     Employment Discrimination Law and the Louisiana Whistleblower Statute

Defendants move pursuant to Rule 12(b)(6) to dismiss plaintiff's claims under Title VII, the Louisiana Employment Discrimination Law and the Louisiana Whistleblower Statute against Dr. Mouton in her individual capacity. Farmer states in her opposition memorandum that she does not bring an individual capacity claim against Dr. Mouton under Title VII, but her complaint is not clear on that point. As a matter of law, "[i]ndividuals are not liable under Title VII in either their individual or official capacities." Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 (5th Cir. 2003); accord Smith v. Amedisys Inc., 298 F.3d 434, 449 (5th Cir. 2002). Accordingly, defendants' motion is GRANTED IN PART and plaintiff's Title VII claims, if any, against Dr. Mouton in her individual and official capacities are dismissed with prejudice.

Farmer does not address defendants' argument that she cannot bring a claim against Dr. Mouton individually under the Louisiana Employment Discrimination Law or Whistleblower Statute. Plaintiff is deemed to have abandoned that argument and those claims. Lavigne v. Cajun Deep Founds., L.L.C., 654 F. App'x 640, 643-44 (5th Cir. 2016), cert. denied, No. 16-464, 2017 WL 1040870 (U.S. Mar. 20, 2017); Med RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs., 633 F. App'x 607, 611 (5th Cir.), cert. denied, 137 S. Ct. 96 (2016).

Even if she has not abandoned these claims, plaintiff cannot state a claim for relief against Dr. Mouton in her individual capacity under the Louisiana Employment Discrimination Law because Dr. Mouton is not an "employer" as defined by the statute; i.e., one "receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Rev. Stat. § 23:302(2). Farmer does not allege in her complaint or her memorandum that Dr. Mouton paid her compensation. Dr. Mouton was not Farmer's employer. Montgomery-Smith v. La. Dep't of Health & Hosps., No. 15-6369, 2017 WL 679536, at *14 (E.D. La. Feb. 21, 2017) (citing Dejoie, 9 So. 3d at 829); accord Stewart v. Caton, No. 13-823, 2013 WL 4459981, at *8 (E.D. La. Aug. 16, 2013). It would be futile to allow plaintiff to amend her complaint in this respect.

The Louisiana Whistleblower Statute similarly provides that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law," discloses or objects to violations of state law in the workplace. La. Rev. Stat. § 23:967(A) (emphasis added). Although this statute "does not define employer, district courts within the Fifth Circuit have applied the definition of 'employer' provided under Louisiana's Employment Discrimination Law, La. Rev. Stat. § 23:302(2), to claims brought under the whistleblower statute, La. Rev. Stat. § 23:967." Johnson v. Hosp. Corp., 767 F. Supp. 2d 678, 691 n.2 (W.D. La. 2011) (citing Jones v. JCC Holding Co., No. 01-0573, 2001 WL 537001, at *3 (E.D. La. May 21, 2001); Langley v. Pinkerton's Inc., 220 F. Supp. 2d 575, 580 (M.D. La. 2002); Jackson v.

<u>Xavier Univ.</u>, No. 01-1659, 2002 WL 1482756, at *6 (E.D. La. July 8, 2002)); <u>accord</u>

<u>Clay v. Pogue</u>, No. 14-2755, 2016 WL 4180006, at *4 n.3 (W.D. La. Aug. 5, 2016)

(citing <u>English v. Wood Grp. PSN, Inc.</u>, No. 15-568, 2015 WL 5061164, at *10-11 (E.D.

La. Aug. 25, 2015); <u>Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.</u>, No.

10-584, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011); <u>Johnson</u>, 767 F. Supp. 2d at

691 n.2); <u>Myers v. BP Am., Inc.</u>, No. 6:08-0168, 2010 WL 3878920, at *3 (W.D. La.

Sept. 28, 2010).  Dr. Mouton is not an employer under the Louisiana Whistleblower

Statute and it would be futile to allow plaintiff to amend her complaint in this respect.

Accordingly, defendants' motion is GRANTED IN PART and plaintiff's claims

against Dr. Mouton individually under the Louisiana Employment Discrimination Law

and the Louisiana Whistleblower Statute are dismissed with prejudice.

### D.      Intentional Infliction of Emotional Distress Claim

Defendants move to dismiss plaintiff's claim of intentional infliction of emotional

distress for failure to state a claim on which relief may be granted.  To establish such a

claim, Farmer must show that Dr. Mouton's conduct was extreme and outrageous, that

plaintiff's emotional distress was severe and that Dr. Mouton desired to inflict severe

emotional distress or knew that severe emotional distress would be certain or

substantially certain to result from her conduct.  <u>Iturralde v. Shaw Group, Inc.</u>, 512 F.

App'x 430, 435 (5th Cir. 2013) (citing <u>White v. Monsanto Co.</u>, 585 So. 2d 1205, 1209

(La. 1991)); <u>accord</u> <u>LaBove v. Raftery</u>, 802 So. 2d 566, 577-78 (La. 2001).

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

White, 585 So. 2d at 1209; accord Iturralde, 512 F. App'x at 435; LaBove, 802 So. 2d at 577-78.

"Conduct which is merely [tortious] or illegal does not rise to the level of being extreme and outrageous." Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1025 (La. 2000). Louisiana Civil Code article 2315, from which the cause of action for intentional infliction of emotional distress derives, "does not create liability for employment discrimination." Iturralde, 512 F. App'x at 435 (citation omitted). "Courts have consistently limited causes of action for [intentional infliction of emotional distress] in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time." Id. (quotation omitted). Actionable cases of intentional infliction of emotional distress are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." Nicholas, 765 So. 2d at 1026. Mere "disciplinary action and conflict in a . . . workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." White, 585 So.2d at 1210.

Plaintiff's complaint as it currently reads fails to allege a claim of intentional infliction of emotional distress. Many of the factual allegations in her complaint have

nothing to do with Farmer personally. The only factual allegation relevant to this claim is that Dr. Mouton "frequently screamed and yelled at Farmer and supervised in an unprofessional manner," Record Doc. No. 1 at p. 5, which on its face is insufficient to state a claim. The complaint fails to assert any extreme and outrageous conduct by Dr. Mouton toward Farmer that exceeds mere discrimination or workplace conflict. Plaintiff fails to allege any facts to show that she suffered severe emotional distress or that Dr. Mouton desired to inflict or knew that such distress would be certain or substantially certain to result. Farmer's allegation that she experienced "extreme and outrageous conduct which went beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized society," Record Doc. No. 1 at p. 5, is a mere conclusory repetition of a legal standard, unsupported by any factual allegations, which the court need not accept as true. Iqbal, 556 U.S. at 678.

Farmer alleges many more facts in her opposition memorandum (many of which also have nothing to do with her personally), allegedly supported by the attached exhibits. Those extraneous facts and exhibits are not before the court, which is "confined to reviewing the allegations in the plaintiff's complaint, including its attachments," on a Rule 12(b)(6) motion. Murchison Capital Partners, 625 F. App'x at 618 n.1. With the exception of the budget documents that are relevant to defendants' Rule 12(b)(1) motion discussed above, none of the exhibits attached to Farmer's memorandum can be considered because her complaint did not refer to them and they are not central to her

claims.  Id.; Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635

(5th Cir. 2014).

However, "a court should not dismiss an action for failure to state a claim under

Rule 12(b)(6) without giving the Plaintiff an opportunity to amend."  Litson-Gruenber

v. JPMorgan Chase & Co., No. 7:09-cv-056-0, 2009 WL 4884426, at *6 (N.D. Tex.

Dec. 16, 2009) (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000));

accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329

(5th Cir. 2002).  The cases that defendants cite in support of their motion to dismiss

plaintiff's intentional infliction of emotional distress claim are not on point because they

were decided based on evidence presented at trial or with a motion to remand, not a

motion under Rule 12(b)6).

Accordingly, defendants' motion to dismiss is DENIED IN PART as to Farmer's

intentional infliction of emotional distress claim at this time.  Plaintiff is GRANTED

leave to file an amended complaint, **no later than 21 days from the date of entry of

this order,** that contains sufficient factual matter to state a plausible claim for intentional

infliction of emotional distress.  If she does not file an amended complaint within that

time, her intentional infliction of emotional distress claim will be deemed immediately

dismissed with prejudice, without further court action.

E.  Section 1983 Claims Against the Board and Dr. Mouton in her Official Capacity

Defendants seek dismissal of plaintiff's claims against the Board and Dr. Mouton in her official capacity under 42 U.S.C. § 1983 on the basis that neither defendant is a "person" within the meaning of that statute. Defendants assert, incorrectly, that Farmer is not seeking injunctive relief against Dr. Mouton in her official capacity, so that the Ex parte Young exception permitting such relief against a state official in her official capacity does not apply.

> Section 1983 provides a private right of action for damages to individuals who are deprived of any rights, privileges, or immunities protected by the Constitution or federal law by any "person" acting under the color of state law. The Supreme Court has held that a State is not a "person" against whom a § 1983 claim for money damages might be asserted. This rule extends to "arms of the state," and to a state's officials acting in their official capacities . . . .

Med RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs., 633 F. App'x 607, 610 (5th Cir.), cert. denied, 137 S. Ct. 96 (2016) (quotations omitted) (citing Lapides v. Bd. of Regents, 535 U.S. 613, 617 (2002); Howlett v. Rose, 496 U.S. 356, 365 (1990); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989); Stotter v. Univ. of Tex., 508 F.3d 812, 821 (5th Cir. 2007)).

Because the Board in the instant case is an arm of the state, it cannot be sued under Section 1983. Adams v. Recovery Sch. Dist. ex rel. La., Dep't of Educ., 463 F. App'x 297, 298-99 & n.7 (5th Cir. 2012) (citing Will, 491 U.S. at 64; Irwin v. Miami-Dade

Cnty. Pub. Sch., 398 F. App'x 503, 507 (11th Cir. 2010); Cheramie v. Tucker, 493 F.2d 586, 587-88 (5th Cir. 1974)); Hines v. Miss. Dep't of Corr., 239 F.3d 366 (5th Cir. 2000) (citing Howlett, 496 U.S. at 364); Van Ooteghem v. Gray, 774 F.2d 1332, 1335 (5th Cir. 1985). Accordingly, defendants' motion to dismiss is GRANTED IN PART as to plaintiff's Section 1983 claims against the Board, which are dismissed with prejudice.

Farmer does not dispute that she cannot bring a Section 1983 claim for damages against Dr. Mouton in her official capacity because a state official is not a "person" under that statute. Med RX/Sys., 633 F. App'x at 610. However, when a state official in her official capacity is sued for injunctive relief, she is "a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Id. (quotations omitted) (citing Will, 491 U.S. at 71 n.10; Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).

In the prayer of her complaint, Farmer mistakenly named herself as the party against whom she seeks declaratory and injunctive relief. Nonetheless, she clearly seeks reinstatement to her former job from both defendants and an order "enjoining and prohibiting FARMER [sic] and the LSBME from further unconstitutional and unlawful employment practices against APRIL FARMER," Record Doc. No. 1 at p. 7, which is prospective relief designed to end a violation of federal law. Jones v. Tex. Juvenile Justice Dep't, 646 F. App'x 374, 376-77 (5th Cir. 2016) (citing Nelson, 535 F.3d at 324); Kobaisy v. Univ. of Miss., 624 F. App'x 195, 198 (5th Cir. 2015)). Defendants'

contention that Dr. Mouton lacks authority to reinstate Farmer "because she is not the appointing authority for the Board," Record Doc. No. 24 at p. 3, is a fact question that may be the subject of a motion for summary judgment, but is not before the court now.

Accordingly, defendants' motion to dismiss is GRANTED IN PART as to Farmer's Section 1983 claims for damages against Dr. Mouton in her official capacity and DENIED as to plaintiff's Section 1983 claims for injunctive relief against Dr. Mouton in her official capacity.

F.      Punitive Damages Claim Against the Board

Defendants argue that Farmer cannot assert a punitive damages claim against the Board because it is a state agency and 42 U.S.C. § 1981a(b)(1) provides that a Title VII plaintiff may only recover punitive damages against a respondent "other than a government, government agency, or subdivision." Farmer responds that the Board "is not immune for punitive damages" because it operates from self-generated funds. Record Doc. No. 18 at p. 16. This argument is unavailing.

Congress expressly abrogated the states' sovereign immunity in Title VII. Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 729 (2003); Raj v. La. State Univ., 714 F.3d 322, 330 (5th Cir. 2013). Thus, employees may sue employers who are "governments, governmental agencies, [or] political subdivisions," 42 U.S.C. § 2000e(a), but plaintiffs are precluded by Section 1981a(b)(1) from recovering punitive damages against those entities. Oden v. Oktibbeha Cty., 246 F.3d 458, 465-66 (5th Cir. 2001)

26

(citing 42 U.S.C. § 1981a(b); <u>Baker v. Runyon</u>, 114 F.3d 668, 669 (7th Cir. 1997)). "Congress, in enacting section 1981a, exempted all government agencies from the Act's punitive damage provision, with no articulated exceptions." <u>Baker</u>, 114 F.3d at 669.

The Board is a "governmental agency" for purposes of Title VII and Section 1981a(b)(1), without any consideration whether it is an "arm of the state" under the Eleventh Amendment or a "person" under Section 1983. <u>Pollard v. Hinds Cty.</u>, No. 3:13CV324-DPJ-FKB, 2014 WL 5324384, at *2, *4 (S.D. Miss. Oct. 17, 2014) (citing <u>Oden</u>, 246 F.3d at 465-66; <u>Baker</u>, 114 F.3d at 669). Therefore, Farmer cannot state a claim for punitive damages against the Board.

Accordingly, defendants' motion is GRANTED IN PART and plaintiff's claim for punitive damages against the Board is dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, IT IS ORDERED that defendant's motion to dismiss is GRANTED IN PART as follows:

(1) Plaintiff's claims under the Louisiana Employment Discrimination Law, Louisiana Whistleblower Statute and Louisiana tort law against the Board and Dr. Mouton in her official capacity are DISMISSED WITHOUT PREJUDICE.

(2) Plaintiff's Title VII claims against Dr. Mouton in her individual and official capacities are DISMISSED WITH PREJUDICE.

(3)  Plaintiff's claims under the Louisiana Employment Discrimination Law and the Louisiana Whistleblower Statute against Dr. Mouton individually are DISMISSED WITH PREJUDICE.

(4)  Plaintiff's Section 1983 claims against the Board are DISMISSED WITH PREJUDICE.

(5)  Plaintiff's Section 1983 claims for damages against Dr. Mouton in her official capacity are DISMISSED WITH PREJUDICE.

(6)  Plaintiff's claim for punitive damages against the Board under Title VII and 42 U.S.C. § 1981a is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that defendants' motion to dismiss is DENIED IN PART at this time as to plaintiff's intentional infliction of emotional distress claim, in that plaintiff is granted leave to file an amended complaint, **no later than 21 days from the date of entry of this order**, that contains sufficient factual matter to state a plausible claim for intentional infliction of emotional distress.  If she does not file an amended complaint within that time, her intentional infliction of emotional distress claim will be deemed dismissed with prejudice.

In all other respects, the motion is DENIED.  Plaintiff's claims remaining for trial at this time are her claims of race discrimination, hostile work environment, constructive discharge and retaliation against the Board in violation of Title VII; against Dr. Mouton in her individual capacity for damages, including punitive damages, under Section 1983;

and against Dr. Mouton in her official capacity for injunctive relief under Section 1983;

and Farmer's intentional infliction of emotional distress claim, subject to the requirement

that she file an amended complaint concerning that claim, as provided above.

New Orleans, Louisiana, this _____8th_____ day of May, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE